UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| Carolyn Javier, Yonathan Santamaria | 1:18-CV-04395 (ARR) (ST) |
| *Plaintiffs* | |
| – against – | **Not for Publication** |
| Bay Ride Hospitality, LLC, Carlo D'Ambrosi, Paul DiDonato | |
| *Defendants*. | **Opinion & Order** |

ROSS, United States District Judge:

Carolyn Javier and Yonathan Santamaria are former employees of Bay Ridge Hospitality, LLC d/b/a Grotto Italian Restaurant, a business owned and operated by Carlo D'Ambrosi and Paul DiDonato. Ms. Javier and Mr. Santamaria allege that defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by paying below minimum wage, failing to pay overtime or spread of hours premiums, and not providing notices required by the Wage Theft Prevention Act ("WTPA").

The parties brought cross-motions for summary judgment on all claims. Defendants' motion is denied, and plaintiffs' cross-motion is granted in part and denied in part. I grant summary judgment for plaintiffs as to liability for the minimum wage, spread of hours, and WTPA violations. Genuine disputes of material fact, especially as to the plaintiffs' work schedules, preclude a summary judgment determination on liability for overtime or a calculation of damages on any of the plaintiffs' claims.

## BACKGROUND

Defendants Paul DiDonato and Carlo D'Ambrosi owned and operated Bay Ridge Hospitality LLC d/b/a Grotto Italian Restaurant ("Grotto."). Carolyn Javier worked at Grotto as a

1

server from December 2016 to June 2018. Yonathan Santamaria worked at Grotto as a busboy, server, and barback from August 2015 through July 2018.

The parties agree that Javier and Santamaria were paid $20 per shift, along with tips, in cash from the cash register, at the end of the day. *See* Defs.' Mem. in Supp. of Summ. J. 8, ECF No. 34-2 ("Defs.' Br."); Santamaria Dep. Defs.' Br., Ex. A 38:13–25, ECF No. 34-5; *see generally* "Daily Sheets" Defs.' Br., Ex. G, ECF Nos. 34-13–31. The parties disagree about the sufficiency of the information provided to employees about the restaurant's tip policy. The parties also disagree about the length and number of shifts that the Javier and Santamaria worked, and whether they were given paystubs.

### A. Information Regarding the Tip Policy

At their depositions, Javier and Santamaria both testified that they were aware that their payment consisted of $20 per shift, along with tips. Santamaria Dep. 38:13–25; Javier Dep. Defs.' Br. Ex. B 20:24–21:18, ECF No. 34-6.

DiAmbrosi hired Santamaria. *See* DiAmbrosi Dep. Stein Aff. Ex. I 34:14–35:22, ECF No. 37-9. He testified that the only paperwork involved in the hiring process was a W-4 form. *Id.* He also stated that when a new employee was hired, a fellow worker would explain the payment policy to him. *Id.* at 62:22–63:9. DiDonato hired Javier. DiDonato Dep. Stein Aff. Ex. H 28:5–30:7, ECF No. 37-8. He testified that he told her upon hiring that her pay would be shift pay and tips, which would be pooled. *Id.*

Two affidavits by former employees, Eddie Marrero and Jacqueline Ristano, state that "[w]e were all told by the owners that our pay consisted of the shift pay we received [plus] whatever we made in tips." Marrero Aff. ¶ 16, ECF No. 34-4; Ristano Aff. ¶ 16, ECF No. 39-4. They also both state that "[o]ur pay stub[s] reflected that our pay consisted of shift pay and tips,

and they were made available to us in the office where each employee would pick them up." *Id.* Ristano further stated, "[w]e were all made aware of the pay and tip policy as a group and met individually with Vincent if we needed further clarification." Ristano Aff. ¶ 11.

**B.     Hours**

The employers did not keep any records of employee time beyond "daily sheets," which record the number of shifts an employee worked on a particular day but do not record specific hours the employee worked. DiDonato Dep. 36:8–37:15;.. Defendants attached approximately 1,000 pages of these daily sheets but have provided no summary or analysis of these voluminous documents. *See* "Daily Sheets," Defs.' Br., Ex. G. A cursory review of the daily sheets appears to confirm that employees at Grotto were paid $20 per shift, and usually worked one shift per day, but sometimes worked double shifts. *See, e.g.*, *id.* at 32.

Javier testified that when she began working at Grotto, she worked five days a week, with Mondays and Wednesdays off. Javier Dep. 22:14–22. She later switched to working four days a week, Thursday through Sunday, with Monday through Wednesday off. *Id.* at 22:14–23:2. Her shifts typically began at 4:00 p.m., and she continued working past the kitchen's closing at 11:00 p.m., until all customers left the restaurant, frequently at 12:30–1:00 a.m. *Id.* at 27:5–28:25. She worked double shifts when a special event was happening, which was about once or twice a week, or when she worked the lunch shift, which she did most weekends. *Id.* at 31:9–32:13; 34:12–25.

Santamaria testified that when he began working at Grotto, he worked six days a week, with Mondays off. *See* Santamaria Dep. 42:20–25. He later switched to working five days a week, with Tuesdays and Sundays off. *Id.* at 57:9–15. His shifts began at 3:00 p.m. and lasted until 11:00 p.m. when he worked as a busboy, and he worked later, until 1:00–3:00 a.m., as a barback. *Id.*

3

32:8–33.

D'Ambrosi testified that the restaurant opened at noon every day, and closed at 10:00 p.m. Monday to Thursday, 11:00 p.m. Friday and Saturday, and 9pm on Sunday. D'Ambrosi Dep.16:9–16:15. He testified that there were two shifts at the restaurant, the first from 12pm to 6pm and the second from 5:00 p.m. to 10:00 p.m., and that on some days, one server worked both shifts. *See id.* at 64:21–65:16. He stated that Javier worked Wednesday through Saturday nights. *Id.* at 46:8–17. He could not recall what days or hours Santamaria worked but stated that he worked six-hour shifts on Friday and Saturday nights, though also mentioned that "If there were customers there they would probably stick around[.]" *Id.* at 36:14–38:14.

DiDonato testified that Santamaria "came in Friday when were busy" when he worked as a busboy at the beginning of his employment. DiDonato Dep. 35:9–16. He did not know what Santamaria's schedule was after he started working as a server and a barback. *See id.* at 35:18–20.

The Marrero and Ristano affidavits state that the restaurant was open for noon until 10 p.m., with two shifts, the first from 12 p.m. to 5p.m, and the second from 5 p.m. to 10 p.m. Marrero Aff. ¶ 11; Ristano Aff. ¶ 11. Both state that employees "did not have to work an (8) hour day, or (40) hour week because of the two shifts, and to my knowledge no one did."; Ristano Aff. ¶ 12; *see also* Marrero Aff. ¶ 12. They also both state that "[o]n rare occasions, someone would work a double shift to replace another employee who did not make it into work." Ristano Aff. ¶ 12; *see also* Marrero Aff. ¶ 12

**C.     Paystubs**

Santamaria and Javier both testified that they did not receive regular paystubs. Santamaria testified that he never received paystubs. Santamaria Dep. 60:3–4, 61:5–7. Javier testified that on two occasions during her employment, a coworker, Marisa Panza, handed her a paystub. Javier

Dep. 41:19–42:5. She testified that Panza got the paystubs from the office downstairs, but that she never went into the office herself, and nobody ever told her that she could receive paystubs. *Id.* at 42:11–42:15. She stated that she never went into the office. *Id.* 42:16–20.

D'Ambrosi stated that the company used Paychex, a payroll company, and that he had seen envelopes from that company but had never seen the actual paystubs. D'Ambrosi Dep. 70:21–72:25. DiDonato concurred that Paychex issued paystubs, and stated that his brother, Vincent DiDonato extracted the information from the daily sheets and ran it through Paychex. DiDonato Dep. 47:13–48:23. DiDonato also testified that he saw envelopes containing paystubs at the restaurant. *Id.* at 50:17–51:6. He stated the envelopes were put on the side of the bar, and then later put downstairs. *Id.* at 51:2–13.

As noted above, the Marrero and Ristano affidavits also state that paystubs were available for employees in the office. Marrero Aff. ¶ 16; Ristano Aff. ¶ 16.

Defendants have provided two Paychex paystubs, one for each plaintiff, which correspond to a pay period of January 28 through February 10, 2018 and a "check date" of August 1, 2018. *See* Defs.' Br. Ex. E 2–3. Javier's purported paystub states that she was paid at a rate of $8.65 per hour, worked 35 hours during the pay period, and earned an additional $390 in tips during the period. *See id.* at 2. Santamaria's purported paystub states that he was paid at a rate of $8.65 per hour, worked 35 hours during the pay period, and earned an additional $375 in tips during the period. *See id.* at 3. The paystubs are not authenticated and neither defendant recognized them. *See* D'Ambrosi Dep. 70:4–22; DiDonato Dep. 50:3–50:21.

## DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When reviewing a motion for summary judgment, the court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "If, in this generous light, a material issue is found to exist, summary judgment is improper, and the case must proceed to trial." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985)).

The moving party may demonstrate that there is no genuine dispute "by showing an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets this burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (citing *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir. 1994)). "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact." *Bacchus Assocs. v. Hartford Fire Ins. Co.*, 766 F. Supp. 104, 108 (S.D.N.Y. 1991). If "no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

A. **Admissibility of Evidence**

Plaintiffs argue that defendants have attached inadmissible evidence to their motion for summary judgment—specifically, affidavits by undisclosed witnesses Eddie Marrero, *see* Marrero Aff., and Jacqueline Ristano, *see* Ristano Aff, and unauthenticated paystubs, *see* Defs.' Br. Ex. E

6

at 2–3. I agree with plaintiffs that this evidence is inadmissible but also note that nothing in those submissions would change the outcome of this summary judgment decision.

1. Affidavits

Fed. R. Civ. P. 37(c) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "[T]o satisfy Rule 26, parties must make an unequivocal statement that they may rely upon an individual on a motion or at trial." *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 73 (E.D.N.Y. 2012). Rule 26 requires pretrial disclosures, including of all potential witnesses. *See* Fed. R. Civ. P. 26.

Defendants never disclosed any information regarding Jacqueline Ristano to plaintiffs prior to including her affidavit in their response to plaintiffs' cross-motion. This failure, which defendants seek to excuse by stating that they forgot that this employee worked for them, *see* Defs.' Resp. to Pls.' Cross-Mot. ("Defs.' Resp.") 28, is not justified. As discussed in further detail below, defendants are not justified in failing to keep records regarding their employees. Similarly, while Eddie Marrero's existence was disclosed to plaintiffs, *see id.*, the fact that defendants intended to rely on him as a witness was not disclosed.[1] Therefore, the two affidavits are both inadmissible.

I also note that the affidavits do not provide any material evidence that would affect the outcome of this case. Affiants may only make statements within their personal knowledge. Fed. R. Civ. P. 56(c)(4). These two affidavits, which are nearly identical, are replete with statements that do not appear to be within the affiants' personal knowledge, without any explanation of why

---

[1] Plaintiffs also allege that defendants provided an inaccurate address for Mr. Marrero. *See* Pls.' Reply 4.

the affiant would have certain knowledge. *See, e.g.*, Marrero Aff. ¶ 6 ("I believe there are no genuine issues of material fact to be determined in connection with this action, but only questions of law."); *id.* at ¶ 16 ("Everyone received a W-2 Form at the end of the year."). Therefore, admissibility problems aside, these affidavits are not probative as to the issues in this case, as no explanation is given as to how Marrero or Ristano would know the details of Javier and Santamaria's employment.

2. Paystubs

On a motion for summary judgment, "[i]f either party seeks to have a court consider documents which are not yet part of the Court's record, the documents must be attached to and authenticated by an appropriate affidavit, and the affiant must be a competent witness through whom the document could be received in evidence at trial." *Crown Heights Jewish Cmty. Council, Inc. v. Fischer*, 63 F. Supp. 2d 231, 241 (E.D.N.Y. 1999), *aff'd* 216 F.3d 1071 (2d Cir. 2000).

Defendants have submitted purported Paychex paystubs for Javier and Santamaria without an accompanying authenticating affidavit. *See* Defs.' Br. Ex. E 2–3. Neither defendant even recognized the paystubs when asked about them in their depositions. D'Ambrosi Dep. 70:21–71:24; DiDonato Dep. 50:3–50:21. Marrero and Ristano reference receiving paystubs while employed at Grotto, but first, their affidavits are inadmissible, and second, a reference to receiving paystubs does nothing to authenticate these particular paystubs. Defendants claim that "[t]he Paychex's [sic] company is in the process of certifying the payroll records for admission at trial if necessary." Def.'s Resp. 27. But if defendants wanted the paystubs considered at summary judgment, they needed to be authenticated when attached to their motion.

Finally, I note that these purported paystubs are entirely inconsistent with the agreed-upon $20 per shift wages that plaintiffs received. No explanation is provided for why the paystubs indicate

8

an hourly rate of $8.65, a wage all parties agree the plaintiffs never received. Even if these paystubs were admissible, they are so incredible that a reasonable jury would not rely on them.

### B. FLSA and New York Labor Law Minimum Wage and Tip Credit

The FLSA and the NYLL each require an employer to pay not less than a statutorily-set minimum wage for each hour of work. *See* 29 U.S.C. § 206(a)(1) (2018); N.Y. Lab. Law § 652(1) (McKinney 2019); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2 (2019) ("NYCRR"). During the relevant period, the minimum wage under the FLSA has been $7.25 per hour, 29 U.S.C. § 206(a)(1)(C), and the minimum wage under New York law has been $9.00 in 2016, N.Y. Lab. Law § 652(1), $10.50 in 2017, and $12.00 in 2018, *id.* § 652(1)(a)(ii); 12 NYCRR § 146-1.2(b).

The FLSA and NYLL allow an employer to take an allowance against an employee's wages, permitting the employee's base wages to fall below the statutory minimum, "provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 500 (S.D.N.Y. 2017) (quoting *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015)), *aff'd*, 752 F. App'x 33 (2d Cir. 2018) (summary order). However, the FLSA and the NYLL both require procedural safeguards, and the employer bears the burden of showing compliance with these requirements. *See Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665, 672–73 (S.D.N.Y. 2017).

1. <u>Tip Credit Requirements Under the FLSA</u>

Under the FLSA, an employer is barred from claiming a tip credit against an employee "unless such employee has been informed by the employer of the [governing FLSA provisions], and all tips received by such employee have been retained by the employee . . . ." 29 U.S.C. § 203(m)(2)(A)(ii); *see also* 29 C.F.R. § 531.59(b) (2019). "This notice provision is strictly construed and normally requires that an employer take affirmative steps to inform affected

9

employees of the employer's intent to claim the tip credit." *Inclan*, 95 F. Supp. 3d at 497–98 (quoting *Perez v. Lorraine Enters., Inc.*, 769 F.3d 23, 27 (1st Cir. 2014)). "Employers bear the burden of showing that they have satisfied this requirement by, for example, providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law." *Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048(GEL), 2007 WL 313483, at *18 (S.D.N.Y. Feb. 1, 2007). Merely informing employees that they will receive wages plus tips, or posting generic labor law posters, do not satisfy this requirement. *Copantitla v. Fiskardo Estiatorio*, Inc., 788 F. Supp. 2d 253, 288 (S.D.N.Y. 2011).

2. Tip Credit Requirements Under NYLL

NYLL imposes requirements in addition to those of the FLSA. The NYLL requires that notice of the tip credit be in writing, in English and the employee's primary language. 12 NYCRR § 146-2.2(a). It further requires that the employer obtain "acknowledgement of receipt [of the tip credit notice] signed by the employee" and mandates that the receipt be maintained on file for six years. *Id.* § 146-2.2(c). The requisite contents of the notice include: (1) identification of the amount of tip credit to be taken from the employee's basic minimum hourly rate; and (2) disclosure that "extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." *Perez-Luna v. Ageha Japanese Fusion, Inc.*, No. 16 Civ. 6040 (AT) (BCM), 2018 WL 8996345, at *3–4 (S.D.N.Y. Aug. 11, 2018); NYCRR § 146-2.2(a). Without following these prerequisites, an employer may not use the tip credit and must pay full minimum wage. *See Lanzetta v. Florio's Enters., Inc.*, 763 F. Supp. 2d 615, 623 (S.D.N.Y. 2011).

3. Application

Here, defendants seek to claim a tip credit, but they have not complied with the requirements of either the FLSA or the NYLL. *See* Def.'s Resp 29–30. Defendants argue that "the

[tip credit] notice was properly given orally and it is indisputable that the Plaintiffs knew that the minimum wage they were entitled to consisted of the 'shift pay' and the tips they received." *Id.* at 30. This argument fails as a matter of law.

The only notice defendants are alleging is that employees "were all told by the owners that our pay consisted of the shift pay we received [plus] whatever we made in tips." Marrero Aff. ¶ 16; Ristano Aff. ¶ 16; *see also* DiDonato Dep. 29:11–30:7 (testifying that he told Javier upon hiring that her pay would be shift pay plus tips). *But see* D'Ambrosi Dep. 63:6–20 (no information given to Santamaria by defendants upon hiring). But this is not the notice that the FLSA requires. The FLSA requires that an employer inform employees "of the provisions of this subsection," meaning the employees must be informed that a tip credit will be applied to the minimum wage. *See Chan*, 2007 WL 313483, at *18. Defendants' only showing that they provided any information about minimum wage is that they posted generic labor law posters, which are insufficient to inform employees that a tip credit is being applied to their wage calculation. *See Copantitla*, 788 F. Supp. 2d at 289–90.

Furthermore, an oral notification cannot meet the requirements of the NYLL, which explicitly requires a written notice in English and the employee's primary language. Defendants have the burden to prove compliance with this statute, but they have not produced any evidence of a written notice to employees regarding the tip credit. Instead, they concede that notice was only given orally. Def.'s Resp. 30. Defendants do not meet the requirements for applying a tip credit under either the FLSA or the NYLL. Therefore, the tip credit may not be applied to the plaintiffs' wages.

To determine whether an employee has been paid the minimum wage, a court must determine the employee's hourly rate, also called the "regular rate." "Under the FLSA, the 'regular

11

rate' is determined by 'dividing an employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked.'" *Java v. El Aguila Bar Rest. Corp.*, No. 16–CV–6691 (JLC), 2018 WL 1953186, at *10 (S.D.N.Y. Apr. 25, 2018) (quoting *Romero v. Anjdev Enters., Inc.*, No. 14-CV-457 (AT), 2017 WL 548216, at *10 (S.D.N.Y. Feb. 10, 2017)). Under NYLL, the regular rate is determined the same way for hospitality workers such as plaintiffs. *See* 12 NYCRR § 146–3.5(b).

Here, the parties dispute the number of hours the plaintiffs worked. But even assuming the facts most favorable to the defendants, plaintiffs' hourly rate was well below minimum wage. The parties agree that plaintiffs' wages were $20 per shift. Assuming that a shift was five hours long, the shortest length that defendants allege, *see* D'Ambrosi Dep. 65:4–16, employees were paid $4 per hour. This falls well below both the federal and New York City minimum wages. Therefore, I grant summary judgment to plaintiffs as to liability for minimum wage violations.

### C.   FLSA and NYLL Overtime

Under the FLSA and its analogous NYLL provisions, employers must compensate employees that work over 40 hours per week at an overtime rate of one and one-half times employees' regular rate of pay. 29 U.S.C. § 207(a)(1); NYLL § 650 et seq.; 12 NYCRR §§ 142-2.2, 146-1.4. When evaluating a motion for summary judgment in relation to a FLSA claim, a threshold question arises regarding the nature and quality of the employer's wage and hour records. *See Lee v. Grand Sichuan E. (NY) Inc.*, 12-CV-08652 (SN), 2014 U.S. Dist. LEXIS 6752, at *35–36 (S.D.N.Y. Jan. 17, 2014). The Supreme Court of the United States determined that it would undermine the remedial nature of the FLSA to penalize employees for their employers' incomplete or inaccurate employment records. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946). "When the employer has kept proper and accurate records the employee may easily

discharge his burden by securing the production of those records." *Id.* at 687. If the employer can only produce "inaccurate or inadequate" records for which the employee has no "convincing substitute[]," then the employee should not be penalized for his inability to demonstrate with specificity the extent of his overtime work. *Id.* When an employer produces inaccurate or inadequate records, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (quoting *Anderson*, 328 U.S. at 687). At this point, the burden "shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negat[e] the reasonableness of the inference to be drawn from the employee's evidence." *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 69 (2d Cir. 1997) (quoting *Anderson*, 328 U.S. at 687–88).

Under the *Anderson* standard, an employee's burden "is not high." *Kuebel*, 643 F.3d at 362. It is possible for a plaintiff to meet his burden through recollection alone. *Id.* Although a plaintiff's burden under the *Anderson* standard is "minimal, there must be at least some credible evidence that he performed overtime work." *Daniels v. 1710 Realty LLC*, 497 F. App'x 137, 139 (2d Cir. 2012) (citing *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 88–89 (2d Cir. 2003)). As long as the plaintiff demonstrates a reasonable basis for calculating damages, a defendant is not entitled to summary judgment simply because an employee's estimates have inconsistencies. *Kuebel,* 643 F.3d at 364–65. "[A] defendant is not entitled to summary judgment under the FLSA simply because the plaintiff has not precisely quantified the amount of uncompensated work he has performed, so long as a genuine issue of fact exists as to whether *some* uncompensated work was performed, defendant[s] knew of this work, and a reasonable basis exists for calculating the

13

amount of that work." *Sherald v. Embrace Techs., Inc.*, No. 11 Civ. 939(TPG), 2013 WL 126355, at *6 (S.D.N.Y. Jan. 10, 2013) (citing *Kuebel*, 643 F.3d at 365).

Here, the defendants have provided inadequate records. The only records of employee time they kept are "daily sheets," which record the number of shifts an employee worked on a particular day but do not record specific hours the employee worked. DiDonato Dep. 36:8–37:15; *see generally* "Daily Sheets," Def.'s Br. Ex. G. In the absence of employer records, plaintiffs may overcome summary judgment through recollection, and inconsistencies in the plaintiffs' recollections do not entitle the defendant to summary judgment. *See Kuebel*, 643 F.3d at 362, 365.

In their depositions, plaintiffs provided their recollections of the hours they worked. Javier testified to working either four or five days a week, typically from 4 p.m. to between 11 p.m. and 1 a.m., but sometimes for a double shift that began earlier in the day. Javier Dep. 22:14–23:2, 27:5–28:25, 31:9–31:25. Even without counting the double shifts, this is a range of seven to nine hours per day, or twenty-eight to forty-five hours a week. She alleges one or two double shifts a week, *see id.* at 31:9–31:25, which would increase that total. Santamaria testified to working five or six days with shifts beginning at 3 p.m. and lasting until anywhere between 11 p.m. and 3 a.m. Santamaria Dep. 32:8–34:17. This would be eight to twelve hours per day, or thirty-five to seventy-two hours per week. Through their recollections, plaintiffs have plausibly alleged that they worked overtime during at least some of their employment at Grotto, and therefore, defendant's motion for summary judgment fails.

Defendants testified to their own recollections, which contradict plaintiffs' account.[2]

---

[2] Marrero and Ristano also provide their recollections that to their knowledge, no employees at Grotto worked over a forty-hour week. Ristano Aff. ¶ 12; Marrero Aff. ¶ 12. But they provide no basis for why they would know what Javier or Santamaria's hours were, and therefore even if the affidavits were admissible, they would not be probative.

D'Ambrosi testified that the restaurant was only open from noon to between 9 and 11 p.m., which would undercut plaintiffs' claims that they worked later than that. *See* D'Ambrosi Dep. 16:9–15. D'Ambrosi further testified that the two shifts lasted from noon to 6 p.m. and 5 p.m. to 10 p.m., meaning an employee worked five or six hours at a time. *Id.* at 65:6–16. Assuming plaintiffs worked four to six days a week, as they testified, based on D'Ambrosi's description of the shifts as five or six hours long, they worked twenty to thirty-six hours a week. Even an occasional double shift would not necessarily bring the work hours above overtime. Drawing all reasonable inferences in favor of the defendants, there is a question of fact as to whether plaintiffs worked overtime.

The only evidence either party has as to the hours the plaintiffs worked is the parties' own recollection. The plaintiffs and the defendants have differing recollections. Therefore, I deny summary judgment. This issue can only be determined by weighing the factual evidence at trial.

**D.  New York Labor Law Spread of Hours Premiums**

"[T]he length of the interval between the beginning and end of an employee's workday" is called the spread of hours. 12 NYCRR § 146-1.6. It "includes working time plus time off for meals plus intervals off duty." *Id.* For every day that the spread of hours is over ten, the employee is entitled to "one additional hour of pay at the basic minimum hourly rate." *Id.* § 146-1.6(a); § 142-2.4. The basic minimum hourly rate is simply the regular minimum wage. *See id.* § 146-1.2.

To establish a NYLL spread of hours claim, a plaintiff must show that during her employment, she worked days with a spread of hours greater than ten. Additionally, she must show that her employer failed to compensate her for the spread.

Javier and Santamaria both allege that they worked at Grotto for durations that at least sometimes surpassed ten hours at a time. Javier Dep. 27:5–28:25, 31:9–37:24; Santamaria Dep.

32:15–34:13. As described above, defendants' contrary evidence creates a material question of fact as to the precise hours plaintiffs worked, and particularly whether that number exceeded forty hours per week. But defendants have not similarly come forward with specific facts to rebut plaintiffs' claims that on some days, they worked ten hours or more at a time. Instead, defendants acknowledge that employees sometimes worked double shifts, which lasted in excess of ten hours. *See* D'Ambrosi 61:20–23 *see also* Def.'s Br. 17 ("[T]he 'daily sheets' indicate that the Plaintiffs got paid $20 'shift pay' and on the rare occasions that they worked a double shift, they got paid an additional $20[.]").

It is undisputed that defendants did not pay the spread-of-hours premium required by New York law. Plaintiffs were paid $20 per shift. If they worked two shifts in a row, they received $40. *See* Def.'s Br. 17. Defendants argue that this payment scheme somehow satisfies the requirements of New York law, *see id.*, but it plainly does not. Therefore, I grant summary judgment for the plaintiffs as to defendants' liability for spread of hours pay. The key issue of how many days plaintiffs worked above ten hours at a time is left until trial.

E.   **New York Labor Law Wage Notices**

Plaintiffs allege that defendants failed to provide two types of written notices required by the WTPA: a notice at time of hiring and regular paystubs. I address each in turn.

1.   Hiring Notice

Upon hiring an employee, NYLL requires an employer to notify the employee in writing of certain conditions pertaining to his employment. For example, an employer must "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing" certain information, including the employee's "rate or rates of pay and basis thereof," as well as "allowances, if any,

claimed as part of the minimum wage, including tip, meal, or lodging allowances[.]" NYLL § 195(1)(a) (2014). *See also* 12 NYCRR § 146-2.2(a).

I grant summary judgment for plaintiffs on this claim because there is no evidence that defendants provided such notice to plaintiffs. In their depositions, defendants discuss hiring plaintiffs, but do not state that they provided any kind of wage notice. DiDonato Dep. 28:5–30:7; D'Ambrosi 34:14–35:22. At most, defendants provided this information orally, *see* DiDonato Dep. 28:5–30:7, which does not satisfy NYLL§ 195(1)(a).

2. Paystubs

NYLL also requires employers to "furnish each employee with a statement with every payment of wages[.]" NYLL § 195(3). That statement must include "the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof . . . ; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." *Id.*

Santamaria and Javier both testified that they did not regularly receive notices of this type. Santamaria testified that he never received any paystubs, Santamaria Dep., 59:22–61:13, while Javier testified that she received them only twice during her employment, Javier Dep. 41:19–43:2.

Defendants do not successfully rebut these claims. DiDonato and D'Ambrosi do both state in their depositions that Paychex paystubs were made available to employees. D'Ambrosi Dep. 70:21–72:25; DiDonato Dep. 47:13 – 48: 23.

But, even assuming that is true, there is no admissible evidence in the record as to what information those paystubs contained. NYLL sets out specific requirements for what information a wage notice must provide, and the best way to demonstrate compliance with this law would be to provide the court with complete and authenticated copies of all wage notices distributed to plaintiffs.

17

As discussed above, the supposed paystubs defendants attached to their motion are both inadmissible and highly suspect. Such paystubs, even if they were distributed to plaintiffs on a regular basis, would not satisfy the requirements of NYLL § 195(3) because they do not accurately reflect the plaintiffs' wages. Employers cannot satisfy the wage notice law by providing employees with documents which do not actually correspond to the employee's work and compensation. Thus, I grant summary judgment for plaintiffs on this portion of their WTPA claim as well.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is denied and plaintiffs' motion for summary judgment is denied in part and granted in part. Specifically, the plaintiffs are granted summary judgment on the issues of defendants' liability for (1) unpaid minimum wage, (2) unpaid spread of hours premiums, and (3) violations of the WTPA. Summary judgment is denied as to the overtime claims. Calculation of damages will also need to be resolved at trial.

So ordered.

\_\_\_\_/s/_____

Allyne R. Ross

United States District Judge

Dated: November 18, 2019

Brooklyn, New York